**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JACOB Y.,

      Plaintiff,

      v.

FRANK BISIGNANO,
  COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

No. 24 CV 3968

Magistrate Judge McShain

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jacob Y. appeals the Commissioner of Social Security's decision denying his application for benefits. For the following reasons, plaintiff's motion to reverse and remand the Commissioner's decision, [15], is denied, the Commissioner's motion for summary judgment, [18]; [19], is granted, and the denial of benefits is affirmed.[1]

**Background**

In November 2019, plaintiff applied for a period of supplemental security income, alleging an onset date of September 16, 2002. [14-1] 17. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge (ALJ). [*Id.*] 17–32. The Appeals Council denied review in June 2021, *see* [*id.*] 1–3, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981.

In May of 2022, the Court granted defendant's agreed motion for reversal with a remand for further administrative proceedings. [14-2] 603. On remand, the ALJ held a hearing and, on January 16, 2024, again denied plaintiff's application for benefits. [14-2] 506-27. Plaintiff did not file written exceptions with the Appeals Council and the Appeals Council did not review plaintiff's case on its own within sixty days after the ALJ's decision, making the ALJ's decision the agency's final decision. [*Id.*] 503–05; [15] 2; *See* 20 C.F.R. §§ 404.955, 404.981. Plaintiff has again appealed to this Court, and the Court has subject-matter jurisdiction under 42 U.S.C. § 405(g).[2]

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [14-1]; [14-2], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. [9].

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date. [14-2] 508. At step two, the ALJ determined that plaintiff had the following severe impairment: autism spectrum disorder. [*Id.*] 509. At step three, the ALJ concluded that plaintiff's impairment did not meet or equal the severity of a listed impairment. [*Id.*]. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity to perform work at all exertional levels, with no restriction of his ability to lift and/or carry, sit, stand or walk throughout an 8 hour workday, except that plaintiff: (1) could only work in non-hazardous environments, i.e., no driving at work, operating moving machinery, working on ladders or at unprotected heights, and he should avoid concentrated exposure to unguarded hazardous machinery; (2) could understand, remember and carry out simple instructions and use judgment to make simple work-related decisions; (3) could tolerate occasional interactions with supervisors and coworkers but no interactions with the general public; (4) could not perform work requiring a specific production rate such as assembly line work; and (5) could deal with occasional changes in a routine work setting [*Id.*] 513–25. At step four, the ALJ held that plaintiff had no past relevant work. [*Id.*] 525. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform: dishwasher (93,000 jobs), cleaners and janitors (706,000 jobs), and inspectors, testers, sorters, samplers, and weighers (10,000 jobs). [*Id.*] 526. Accordingly, the ALJ concluded that plaintiff was not disabled. [*Id.*] 527.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052–53 (7th Cir. 2024) (citation modified). The Court should "examine the ALJ's decision to determine whether it reflects a logical bridge from the evidence to the conclusions that gives [it] a sufficient basis to assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review. *Chambers v. Saul*, 861 F. App'x 95, 100 (7th Cir. 2021) (citation modified).

## Discussion

Plaintiff argues that the denial of benefits should be reversed because the ALJ (1) improperly determined plaintiff's Residual Functional Capacity ("RFC"), (2) failed to support his conclusion that plaintiff's RFC would allow him to engage in full-time

employment, and (3) failed to evaluate the intensity, persistence, or limiting effect of plaintiff's symptoms. *See* [15] 7–16. The Court rejects all three arguments.

### A. The RFC assigned to plaintiff by the ALJ is supported by substantial evidence.

Plaintiff argues that, in fashioning an RFC that allows plaintiff to perform unskilled work, "the ALJ failed to confront evidence that . . . [plaintiff] required extensive supports to maintain part-time employment, and additionally failed to provide a logical bridge between the evidence cited and his conclusions; for that reason, remand is warranted in this case." [15] 8.

An RFC is the ALJ's description of the maximum type or level of work a plaintiff can do despite his limitations. *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). That unique RFC, along with other factors, is then used by a vocational expert to testify regarding what, if any, jobs exist in the national economy that plaintiff could perform. *See e.g.*, *Gail A. v. Kijakazi*, No. 22 CV 7248, 2023 WL 8451697, at *4 (N.D. Ill. Dec. 6, 2023). "An ALJ must evaluate all relevant evidence when determining an applicant's RFC[.]" *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). "Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence." *Id.* at 592. "The ALJ must explain [his] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Moira L. v. Kijakazi*, No. 19 C 2687, 2022 WL 846469, at *2 (N.D. Ill. Mar. 22, 2022) (citation modified).

In support of the argument that the ALJ improperly fashioned his RFC, plaintiff first cites information from teachers and medical providers, including: (1) a questionnaire from Megumi Hoshi, his case manager at the Community-Integrated Transition Education program, [15] 8; (2) a treatment note from his therapist, Dawn La Brose, [*id.*]; (3) a note from his speech and language therapist, Katherine Wilkie, [*id.*]; and (4) a psychological assessment performed by Dr. Mark Langgut, [*id.*].[3]

Yet, the ALJ's decision explained in detail why he did not find persuasive the opinions of Ms. Hoshi, [14-2] 522, Ms. La Brose, [*id.*] 521–22, and Ms. Willkie, [*id.*] 524. Ms. Hoshi's letter, written in 2020, indicated that plaintiff had been unable to obtain employment and would likely need a job coach as well as supports in getting to and from work. [14-1] 318. The ALJ noted this opinion but explained that he believed it was inconsistent with the record evidence because, as of the 2023 hearing,

---

[3] Plaintiff also cites a portion of the opinion of Dr. David Voss, the agency reviewing consultant, which states that plaintiff "may need minor additional supervision beyond what is commonly provided in a typical work setting, particularly when learning new tasks." [14-1] 97; [15] 9. But as with the other citations, the ALJ considered the opinion and determined that specific statement was not indicative of greater limitations than the RFC assigned.

plaintiff was doing well at his current part-time job while also attending college part-time and transporting himself to both. [14-2] 522. Ms. La Brose's letter explained that plaintiff lacks basic life skills and would need support in several areas, including transportation. [*Id.*] 413. The ALJ found this opinion inconsistent with the record evidence that plaintiff drove himself to school and work in addition to managing a busy schedule. [*Id.*] 521. Ms. Wilkie's progress notes stated that plaintiff needed support from supervisors to provide explicit instructions to complete functional tasks. [*Id.*] 841. The ALJ found this non-persuasive because the record showed plaintiff completing his current part-time job tasks well while at the same time managing college courses. [*Id.*] 524.

While the ALJ did not opine on the persuasiveness of Dr. Langgut's opinion, plaintiff only cited that opinion for the finding that plaintiff "would require a representative payee to manage his disability benefits[.]" [15] 8. Further, that opinion was based on plaintiff's "relative youth, inexperience with the world[,] . . . and areas of limited functional abilities[.]" [14-2] 366. And Dr. Langgut concluded his opinion by stating "[o]ver time, and with gains in maturity, experience, and basic skills in the areas of budgeting and judgment, the claimant may become able to manage those funds . . . independently[.]" [*Id.*].

Next, plaintiff identifies information in the record regarding his limitations and circumstances surrounding his current and prior part-time employment. [15] 9. Regarding plaintiff's prior part-time position, the record contains a letter from the general manager. [14-2] 524, 783. This letter explained that plaintiff never developed the "speed or sense of urgency" to "load[] and unload[] the dishes by" himself. [*Id.*] 783. But again, the ALJ weighed that evidence in his decision. The ALJ noted that the letter's author was "not a medical professional" and that its observations were from before plaintiff's current employment. [*Id.*] 524. As such, the ALJ found the letter to "only be of some persuasive value." [*Id.*].

When discussing plaintiff's current employment, it is true that the ALJ never used the term "job coach[.]" [15] 9. However, the ALJ did cite the exhibit containing the job coach's notes. [14-2] 524. These notes consist of only three entries over about a month. [*Id.*] 781–82. In the sentences following that citation, the ALJ acknowledged that plaintiff was "initially . . . shadowed" but that there "is no actual documentation in the record to show that the claimant requires constant support/supervision or is unable to do this position independently." [*Id.*] 524. Importantly, "shadowed" was the term used by plaintiff in the hearing to describe the work of the job coach. [*Id.*] 541.

Finally, plaintiff claims that the ALJ's discussion of his ability to attend college while working part-time did not fully consider the support plaintiff received in doing so. [15] 10. However, the ALJ acknowledged several times that while plaintiff was receiving accommodations, including help from his parents, plaintiff was performing college level work, receiving good grades and that the RFC was appropriate because

4

it limited plaintiff to only understanding, remembering and carrying out simple instructions. [14-2] 522.

In summary, plaintiff's argument, rather than identifying reversible error in the ALJ's decision, asks the Court to weigh the evidence and arrive at a different conclusion. But that is not the Court's role here. *Frank J. v. Saul*, No. 19 C 3176, 2020 WL 6447928, at *5 (N.D. Ill. Nov. 3, 2020). If the Court can "trace the path of the ALJ's reasoning," which the Court finds it can here, "the ALJ has done enough." *Sherise C. v. Dudek*, No. 24 C 11199, 2025 WL 1260831, at *3 (N.D. Ill. Apr. 30, 2025) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

For these reasons, the Court rejects plaintiff's first ground for remand.

### B. The ALJ supported his conclusion that plaintiff's RFC would allow him to engage in full-time employment.

Plaintiff argues that "the ALJ provided no rationale to support his conclusion that avoidance of a specific production rate would permit . . . [plaintiff] to perform full-time competitive employment, particularly where, as here, the evidence shows that . . . [plaintiff] struggled to meet employer expectations with pace and persistence."[4] [15] 11–12. The Court disagrees that "no rationale" was provided by the ALJ.

A plaintiff's limitations related to concentration, persistence, and pace ("CPP") have been the subject of much litigation in recent years. *Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The Seventh Circuit has explained that simply limiting a plaintiff to unskilled work, simple tasks, or jobs without production quotas is insufficient to address a plaintiff's CPP limitations. *Id.* (collecting cases). However, when an agency consultant translates a CPP limitation into a narrative, the ALJ can rely on that narrative to craft an RFC. *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021).

First, the ALJ discussed at length why he agreed with the agency consultant that plaintiff only had "moderate limitations in his abilities to . . . concentrate, persist, or maintain pace." [14-2] 511–12, 520. Relying on the agency consultant's note, the ALJ stated that plaintiff's "medically determinable impairment would not interfere with his ability to complete simple tasks." [*Id.*] 521. To support this statement the ALJ cited the consultant's narrative translation of plaintiff's "concentration and persistence . . . limitations[.]" [14-1] 97. In this section the consultant wrote: "the claimant can maintain the concentration and persistence necessary to carry out simple tasks in a reasonably punctual fashion and consistent pace in a typical work

---

[4] Plaintiff also argues in his reply that the ALJ's decision failed to provide a rationale for "only restrict[ing] . . . [plaintiff] from assembly line work." [20] 4. But the ALJ restricted plaintiff from all work with a specific production rate and simply used assembly line work as an example. [14-2] 520. Importantly, the Vocational Expert's testimony was based on an RFC without any production rate requirement. [14-2] 559 ("Yes, we're looking at medium on skill, simple work with no production requirements, communication.").

environment." [*Id.*]. The ALJ then explicitly stated that he designed plaintiff's RFC to address those exact limitations by restricting plaintiff "to simple instructions and simple work-related decisions . . . [i]n addition . . . to no work requiring a specific production rate." [14-2] 520.

Second, the ALJ's decision specifically articulated how the RFC accommodated plaintiff's documented CPP related difficulties at his current employment.[5] The relevant portion of the record, cited by both plaintiff, [15] 13, and the ALJ, [14-2] 519–25, comes from an excerpt of an email authored by Brian Dubina (a pre-vocational education coordinator at plaintiff's high school) to plaintiff's mother. Mr. Dubina observed plaintiff at his job site at the retirement home and reported:

> Jacob sometimes needed to be told what to do next . . . he would stand and wait for his supervisor or someone else to say what it was he should do . . . which in itself isn't a problem because there isn't a routine except Jacob didn't always approach the supervisor to ask after he finished one task . . . he sometimes would just stand there and wait until someone noticed he wasn't working. So having Jacob initiate that he needed something to do next would be helpful.

[14-2] 780 (ellipses in original). Mr. Dubina continued: "I only observed one day, but I saw a few instances where Jacob did something in a relatively inefficient way[.]" [*Id.*]. When discussing Mr. Dubina's observations, the ALJ acknowledged that:

> Though sometimes the claimant needed to be told what to do next and there were a few instances where he did something in a relatively inefficient way, there is no indication of a problem requiring additional supervision such as to suggest further limitations. It is noted that the residual functional capacity is more restrictive than the claimant's current work per the vocational expert. Moreover, per the state agency finding, overall, the claimant's mental medically determinable impairment would not interfere with his ability to complete simple tasks.
> . . .
>
> Also, the residual functional capacity limits the claimant to no more than occasional changes in a routine work setting[.]

[14-2] 521, 525 (internal citations omitted).

---

[5] The ALJ also discussed the fact that plaintiff never rose to the level of an "independent dishwasher" at his previous employment, noting that the author of the letter (the general manager at the retirement home) was "not a medical professional" and the letter was an assessment of plaintiff's capabilities without the benefit of evidence from plaintiff's current job. [14-2] 524. The ALJ stated that, despite that letter, he did "not find that the record in total suggests that the claimant has a problem with pacing to support greater limitations in the" assigned RFC. [*Id.*] 524–25.

The Court finds that the ALJ's discussion regarding how plaintiff's RFC addressed his moderate CPP limitation meets the minimal articulation requirements of the substantial evidence standard. *See Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) ("minimally articulated" is "a very deferential standard that we have, in fact, deemed lax") (citation modified)

The reminder of plaintiff's argument in this section is focused on identifying parts of the record that the plaintiff believes the ALJ should have weighed differently. But again, the Court cannot reweigh the evidence. *See Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).

For these reasons, the Court rejects plaintiff's second ground for remand.

## C. The ALJ properly evaluated the intensity, persistence, or limiting effect of plaintiff's symptoms.

Finally, plaintiff argues that the ALJ "[v]iolated SSR 16-3p" because he did not properly "evaluate the intensity, persistence, or limiting effects of . . . [plaintiff's] symptoms" [15] 14.

Social Security Regulation 16-3p prescribes a two-step process for an ALJ to use when evaluating an individual's symptoms. *Jacqueline V. v. O'Malley*, No. 20 CV 6272, 2024 WL 1363710, at *7 (N.D. Ill. Mar. 29, 2024). "First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his or her symptoms." *Maria S. v. Kijakazi*, No. 20 C 6727, 2023 WL 7130376, at *7 (N.D. Ill. Oct. 30, 2023) (citing SSR 16-3p, 2017 WL 4790249, *49463). "Next, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." *Id.* (citation modified).

As with all parts of the Court's review of an ALJ's decision, when reviewing the ALJ's assessment of plaintiff's symptoms, this Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (citation modified). However, an "ALJ must explain h[is] subjective symptom evaluation in such a way that allows the Court to determine whether []he reached h[is] decision in a rational manner, logically based on h[is] specific findings and the evidence in the record." *Alejandro D. v. O'Malley*, No. 21 CV 5250, 2024 WL 4465475, at *5 (N.D. Ill. Oct. 10, 2024) (citation modified). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Id.* (citation modified). "[F]laws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [a plaintiff] was exaggerating h[is]

7

symptoms. Not all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original) (citation modified). The Seventh Circuit has ruled that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

In the first step, the ALJ found that plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms[.]" [14-2] 515. In completing the second step, the ALJ determined that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [*Id.*]. Importantly, the ALJ also explained that the RFC he assigned plaintiff "adequately addressed and accommodated" the "location, duration, frequency, and intensity of the claimant's alleged symptoms[.]" [Id.] 525.

Plaintiff claims that the ALJ committed reversible error by failing to fully consider that plaintiff "had significant support in several areas" when evaluating plaintiff's subjective symptoms against the record evidence. [15] 14–15. But, as discussed earlier in this opinion, the ALJ's decision acknowledged several times that plaintiff received such supports. For example, when discussing plaintiff's class work the ALJ admitted that plaintiff receives additional time taking tests, the ability to record lectures, and assistance from his parents. [14-2] 511, 514. At the same time, the ALJ noted that the course work was at the college level and that he did believe those supports indicated an RFC different than what the ALJ had designated. [*Id.*] 522.

More importantly, the ALJ spent several pages earlier in his decision discussing each of plaintiff's reported symptoms and explaining why his analysis of the record led to his conclusion that plaintiff could maintain full time employment in conformity with the RFC assessed. [*Id.*] 509–12; *See Henderson v. Kijakazi*, Case No. 22 C 3890, 2023 WL 6388143, at 3 (N.D. Ill. Sept. 29, 2023) ("The court applies a common-sense reading to the entirety of an ALJ's decision" and "reads the ALJ's decision as a whole.") (internal citations omitted). Regarding plaintiff's CPP limitations, the ALJ wrote:

> The claimant reported trouble with completing tasks and concentration. Nonetheless, the claimant can concentrate, persist, or maintain pace to be able to work part-time jobs at the park district and a dentist office as well as at a retirement home as a food service worker. Further, the claimant attends college and gets A's and B's per testimony. The claimant is on track to complete his associate degree, though the claimant's mother indicated that the claimant receives assistance with

his coursework from his parents and it is acknowledged that the claimant receives accommodations.

. . .

The claimant can drive independently, including to his college classes and to his part-time job. The ability to drive includes concentrating on the road and reacting to multiple stimuli, including driving hazards, to make rapid, accurate, and safe decisions as well as persisting and maintaining pace while driving to follow directions to reach his destination. The claimant also can ride his bike, including to his college classes and his parttime job, with his schedule being different on different days. Further, the claimant rides public transportation

. . .

Concerning the medical evidence, the claimant's therapist evaluated that the claimant was impaired in concentration. The claimant's psychiatry records show that he exhibited a normal thought process, though noted it was somewhat slowed. The claimant underwent a psychological consultative examination where the examiner found that the claimant demonstrated deficient basic computational skills, but otherwise found that the claimant's thought processes were characterized by average coherence and normal speed, flexibility, and suggestibility. Neuropsychological testing found that attention and set shifting were noted to be among the claimant's strengths, with performance broadly within normal limits. In sum, I find that the evidence shows that the claimant has no more than a moderate limitation in concentrating, persisting, or maintaining pace.

[14-2] 511–12 (internal citations omitted).[6] The ALJ repeated this exercise for plaintiff's reported symptoms related to "understanding, remembering or applying information," "interacting with others," and "adapting or managing oneself[.]" [14-2] 509–12. Thus, the Court finds that the ALJ has properly explained his decision in a way that allows the Court to determine that he arrived at his conclusion in a rational manner based on specific findings and record evidence. *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

For these reasons, the Court rejects plaintiff's third ground for remand.

---

[6] Plaintiff also argues that his ability to drive is not a reasonable consideration regarding his capacity to work. [15] 15. That sort of weighing of the record evidence is the responsibility of the ALJ, not the Court. *Martha C. v. Bisignano*, No. 23 C 14848, 2026 WL 194635, at *3 (N.D. Ill. Jan. 26, 2026).

## Conclusion

Plaintiff's motion to reverse and remand, [15], is denied, the Commissioner's motion for summary judgment, [18]; [19], is granted, and the denial of benefits is affirmed.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: March 19, 2026**

10